Annick M. Persinger (CA Bar No. 272996)
apersinger@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

Hassan A. Zavareei (CA Bar No. 181547)
hzavareei@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Stuart E. Scott (OH Bar No. 0064834)*
sscott@spanglaw.com
Kevin Hulick (OH Bar No. 0093921)*
khulick@spanglaw.com
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone (216) 696-3232
Facsimile (216) 696-3924

*Attorneys for Plaintiff*

*pro hac vice application to be submitted

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENUS YAMASAKI, *on behalf of herself and all others similarly situated*,<br><br>           Plaintiff,<br><br>   v.<br><br>NATROL, LLC,<br><br>           Defendant. | **CLASS ACTION**<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code § 17200, *et seq.*;<br>2. VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, Civil Code § 1750, *et seq.*; and<br>3. BREACH OF EXPRESS WARRANTY<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Venus Yamasaki ("Plaintiff" or "Ms. Yamasaki") brings this action on behalf of herself and all others similarly situated against Defendant Natrol, LLC ("Natrol") and states as follows:

## NATURE OF ACTION

1. In all of its marketing materials, Natrol claims that its "Natrol Cognium® Memory" ("Cognium Memory") and "Natrol Cognium® Memory Extra Strength" ("Cognium Memory Extra Strength") (collectively the "Cognium Products") provide improved memory and recall. To make matters worse, to deceptively imply scientific significance and credibility, the Cognium Products' packaging also states that the Cognium Products contain the "#1 most clinically studied ingredient for memory."

2. Based on Natrol's representations, Plaintiff Yamasaki and similarly situated California consumers like her purchased Cognium Products to improve their memory. Indeed, these efficacy claims are the only reason a consumer would purchase the Cognium Products.

3. Natrol's advertising claims, however, are provably false, misleading, and reasonably likely to deceive the public because reliable scientific evidence, including expert opinion and scientific studies, shows that the so-called active ingredient in the Cognium Products, silk protein hydrolysate, is no more effective than a placebo at improving memory.

4. The fundamental reason that the Cognium Products are not capable of having any effect beyond that of a placebo is that it is scientifically impossible for silk protein hydrolysate to provide the brain health and memory benefits that Natrol promises. Contrary to Natrol's uniform advertising claims, experts confirm that silk protein hydrolysate is digested in the human gastrointestinal track, the same way any other protein is ingested. Because the Cognium Products are digested they cannot have the effect on brain function claimed beyond that of a placebo pill—in fact, a sugar pill likely has more protein than the Cognium Product, which have less protein than a slice of bread.

5. Accordingly, Plaintiff brings this action for violation of California consumer protection laws and for breach of express warranty on behalf of herself and similarly situated persons to obtain a full refund for herself and for all other similarly situated purchasers in California for the worthless product they purchased at $20 a bottle, as well as for injunctive relief.

**JURISDICTION AND VENUE**

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant.

7.      This Court has personal jurisdiction over Defendant, because Defendant is authorized to conduct and do business in California. Defendant has marketed, promoted, distributed, and sold the Cognium Products in California, and Defendant has sufficient minimum contacts with this State and/or has sufficiently availed itself of the markets in this State through its promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. 1965(a), because Defendant transacts substantial business in this District.

**PARTIES**

9.      Plaintiff Venus Yamasaki resides in Daly City, California. In late 2020, Plaintiff was exposed to and saw Natrol's misrepresentations regarding the brain function and memory benefits of Cognium by reading the Cognium Product label on the Amazon website. In reliance on the claims listed on the Product label, such as that the Product would improve memory and recall, on October 8, 2020, Ms. Yamasaki purchased Cognium. She paid $40.36 for two 60 count 100 mg tablet bottle of Cognium because she believed the Product would provide the advertised brain health and memory benefits. However, the Cognium Product did not help or improve Plaintiff's memory as advertised. Thus, as a result of this purchase, Ms. Yamasaki suffered injury in fact and lost money. Had Plaintiff known the truth about Natrol's misrepresentations and omissions, she would not have purchased Cognium. Plaintiff is not claiming physical harm or seeking the recovery of personal injury damages. Plaintiff is an average consumer, with no expertise in the blood brain barrier or functionality of the ingredients in Cognium, and, thus, is at risk of reasonably, but incorrectly, assuming that Natrol fixed

1   the formulation of the Products to now function as advertised. Plaintiff also still desires a product that

2   can provide her with brain health, and improved memory, and thus would buy Cognium in the future

3   if she believed that Natrol's representations were true. Indeed, if Natrol were to correct its

4   misrepresentations and omissions, such as by reformulating the product to make the Product work

5   and the representations accurate, then Ms. Yamasaki would purchase Cognium in the future. She is at

6   risk of future harm because of her inability to rely on the validity of the information on Cognium

7   packaging with any confidence on a going forward basis—despite her desire to purchase a product

8   conferring its purported benefits.

9       10.     Defendant Natrol, LLC is a limited liability company organized and existing under the

10   laws of the state of Delaware. Natrol is owned by Nyx Holdco, Inc., which is a Delaware corporation.

11       11.     Natrol manufactures, advertises, markets, and distributes the Cognium Products to

12   thousands of consumers across the country and in the State of California.

13                                    **FACTUAL ALLEGATIONS**

14   **I.    Natrol's Advertising and Sale of the Cognium Products**

15       12.     Since 2017, Natrol has distributed, marketed, and sold Cognium on a nationwide basis,

16   including in California.

17       13.     The Cognium Products are sold at a variety of grocery chains, retail stores, online

18   stores, pharmacies, and low-cost retailers, including Amazon.

19       14.     Natrol sells two Cognium Products: (1) Cognium Memory, which bottles contain 60

20   tablets of 100 mg Cognium, and (2) Cognium Memory Extra Strength, which bottles contain 60 tablets

21   of 200 mg Cognium.

22       15.     "Cognium" refers to silk protein hydrolysate. In that regard, as stated on the Cognium

23   Products' packaging, "Cognium Memory is powered by natural protein from silkworm cocoons."

24       16.     As detailed herein, competent scientific evidence demonstrates that the silk protein

25   hydrolysate in the Products is not capable of producing the improved memory and recall that Natrol

26   promises purchasers. Natrol's advertising claims are provably false and misleading as a result.

27       17.     Natrol has reaped enormous profits from its false advertising and sale of the Cognium

28   Products.

### A. *Natrol's Uniform Advertising of the Cognium Products*

18.     Throughout its advertising of the Cognium Products, Natrol has consistently advertised that consuming the Cognium Products will improve memory, recall, and brain health.

19.     Natrol has disseminated this message across a variety of media, including its website and online promotional materials, and most importantly, at the point of purchase on the front of the Cognium Products' packaging and labeling where it cannot be missed by consumers.[1]

20.     Throughout the relevant time period, Natrol has packaged the Cognium Products using substantially similar and deceptive packages and labels with the memory and brain health benefit advertising messaging at issue.

21.     The front of the Cognium Products' packaging and labeling states in large, bolded font that the Cognium Products are "Clinically Shown to Improve Memory and Recall." In addition, the front of the Cognium Products' packaging and labeling states in all capital letters, printed in large font that the Cognium Products are for "BRAIN HEALTH." What's more, the word "MEMORY" appears immediately below the word "Cognium" in large, bolded font on the front of the package. And the bottom left corner of the front label states in all capital letters, that Cognium is the "#1 Most Clinically Studied Ingredient for Memory." The word "memory" is set in a typeface much larger than the rest of the message, except for the number 1, which is also larger than the rest of the message.

---

[1] Indeed, even in online promotional materials, such materials show the front label of the product. For instance, the Natrol website prominently displays the product label when advertising Cognium. *See* https://www.natrol.com/store/natrol-cognium-memory-brain-health-tablets.

22.     The front panels for the labels for each package of Cognium Memory and Cognium Memory Extra Strength appear substantially as follows:



23.     Throughout the other packaging panels of the Cognium Products' packing panels, Natrol repeats and reinforces the false and deceptive brain health and memory improvement claim.

24.     For instance, the side-panel packaging reinforced the false and deceptive brain health and memory claims, including that that "Cognium Memory keeps your mind sharp and your memory strong." Directly below that, the packaging states that "Cognium Memory is powered by a natural protein from silkworm cocoons. It has been shown to be effective in healthy adults in multiple clinical trials."

25.     In addition, the side-panel packaging also claims that using Cognium results in "Improved Memory and Performance." This panel includes a bar chart that purports to show the results of a "Published study," whereby users of Cognium Memory experienced increases in "Memory Recall Efficiency," in just 21 days.

26.     Furthermore, the side-panel packaging promises "Results in 4 weeks" in bold all caps font, making the claim that "[c]linical studies showed statistically significant improvement in memory and recall in 4 weeks or less when taken as directed by healthy adults."



27.     Natrol's marketing representations in other media repeat and reinforce the false and misleading brain health benefit claims made on the packaging and labeling for the Cognium Products. For example, on their website, www.natrol.com/store/natrol-cognium-brain-health-tablets, Natrol claims that "Natrol Cognium keeps your mind sharp and your memory strong."[2] Natrol also claims that "multiple clinical studies have shown statistically significant improvements in memory and recall in healthy adults, in as little as four weeks."

**B.  *Natrol's Representations are Deceptive and Misleading as Clinical Evidence Refutes Natrol's Representations***

28.     Both Cognium Products have one active ingredient: silk protein hydrolysate.

29.     Natrol's memory and brain claims are provably false and misleading, because, as

_____

[2] *See also* https://www.natrol.com/store/natrol-cognium-extra-strength-brain-health-tablets.

1    Plaintiff's expert, Richard Bazinet, Ph.D., will testify, when Cognium is ingested, it is broken down in

2    the digestive system by strong stomach acid and digestive enzymes. Plaintiff's expert will further opine

3    that, even if some of the Cognium persists beyond the stomach and is absorbed into the blood, the

4    blood-brain barrier, the natural gate-keeper of the brain, would keep out anything left of the substance.

5    Ultimately, Plaintiff's expert concludes, Cognium cannot impact the brain because it *does not* absorb

6    into the blood stream or cross the blood-brain barrier. Only if the active ingredient crossed the blood-

7    brain barrier could it potentially cause any improvement whatsoever to brain performance.

8        30.    Stated otherwise, as Plaintiff's expert will explain, silk protein hydrolysate is a protein.

9    Like all proteins it is subjected to digestion in the human gastrointestinal track. During this process,

10    silk protein hydrolysate is broken down into its amino acid constituent parts. Thus, by the time it

11    reaches the bloodstream, it has become amino acids. This is no different than any other protein, such

12    as those found in ordinary foods, like fish, turkey, or even bread.

13        31.    Notably, the amount of protein ingested when a consumer takes Cognium is trivial to

14    other foods. For instance, a slice of white bread contains 2.57 grams of protein. A single dose of

15    Cognium Memory contains 100 mg of protein. Thus, a single slice of bread contains over 25 times the

16    amount of protein as does a dose of Cognium Memory.

17        32.    Moreover, as Plaintiff's expert will testify, even if silk protein hydrolysate was not fully

18    digested and were to somehow enter the bloodstream, it would not be able to pass the blood-brain

19    barrier. Most importantly, the only molecules that are able to cross the blood brain barrier are those

20    under .04-.06 kilodaltons and soluble in fat not water. Silk protein hydrolysate does not have a

21    molecular mass that small. Rather, like most proteins, silk protein hyrdolysate is much too large to

22    cross the blood brain barrier and is soluble in water, not fat. As a result, it has no effect on a user's

23    memory.

24        33.    On its website, Natrol brandishes four studies[3] that claim to support its claim that

25    Cognium is "clinically shown to improve memory and recall in healthy adults." All of these studies

26

27    _____

[3] Previously, Natrol provided links to seven studies on its website; however, when it updated its

28    website in June 2022, it removed three of the studies. The removed studies suffered from similar methodological flaws as the studies that remain on Natrol's website.

1   suffer from serious deficiencies such that they do not support the claim that Cognium is "clinically

2   shown to improve memory and recall in healthy adults."

3       34.   A 2004 study entitled "Association between Cerebral Blood Flow and Cognitive

4   Improvement Effect by *B. mori* Extracted Component" makes the claim that administration of 400

5   mg of Cognium—4 times the amount in Cognium Memory—twice a day for three weeks, resulted in

6   a 9-point increase in IQ among study participants. The study consisted of four individuals and did not

7   make use of a control group. This falls well below anything that would be sufficient to show that an

8   ingredient is "clinically proven" to do anything.

9       35.   The other three studies are similarly flawed.

10      36.   The other three studies, while using sample sizes larger than four, still employ sample

11   sizes that are too small to provide any scientific value—in some instances it is not even clear how

12   many individuals actually consumed Cognium.

13      37.   Another study from 2004, "BF-7 Improved Memory Function and Protected Neuron

14   from Oxidative Stress" uses 66 individuals, broken into three groups, though the study fails to identify

15   the sizes of the respective groups.

16      38.   Two studies broke its participants into three groups (placebo, low dose, and high dose)

17   with each group having between 32 and 34 persons—"The Improvement of Learning and Memory

18   Ability of Persons by BF-7" and "The Effect of Bf-7 on the Ischemia-Induced Learning and Memory

19   Deficits." Due to this breakdown, while larger than the other studies, these numbers are still much

20   too small to show any actual significance. Furthermore, one of the studies, "The Effect of BF-7 on

21   the Ischemia Inducted Learning and Memory Deficits," fails to state how many doses of Cognium

22   each individual was given.

23      39.   Finally, "The Improvement of Short- and Long-term Memory of Young Children by

24   BF-7" only contains an abstract of the article in English. The remainder of the article is written in

25   Korean and has not been translated. But the study itself is only limited to children, and the abstract

26   fails to show the number of children in the study or the actual results of any tests. Rather, the abstract

27   simply speaks in broad terms. For instance, the abstract claims "the ability of memory application and

28

1    awareness of complex thing [sic] were also significantly improved." Such a vague explanation fails to

2    provide any evidence that the conclusion is valid.[4]

3        40.     In short, none of the studies on Natrol's website provide any scientific support for the

4    claim that Cognium is "clinically shown to improve memory and recall in healthy adults." Rather, they

5    are simply an attempt to apply a deceiving scientific sheen onto a baseless advertising claim that

6    competent scientific evidence refutes.

7                              **CLASS DEFINITION AND ALLEGATIONS**

8        41.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action

9    for herself and all members of the following class of similarly situated individuals (the "Class"):

10           All people who purchased Cognium Memory or Cognium Memory Extra Strength for

11           personal or household purposes in California within the applicable statute of limitations

12           through the date of class certification.

13       42.     The following individuals are excluded from the Class: Natrol, Natrol's officers,

14   directors, and employees, and those who purchased Cognium Memory or Cognium Memory Extra

15   Strength for the purpose of resale.

16       **A.  Numerosity**

17       43.     Cognium Memory is sold throughout California such that the Class is so numerous

18   that joinder of all members of the Class is impracticable.

19       **B.  Common Questions of Law and Fact Predominate**

20       44.     This action involves common questions of law and fact, which predominate over any

21   questions affecting individual Class members. These common legal and factual questions include but

22   are not limited to, the following:

23           a.     Whether the claims discussed above are true, or are misleading, or objectively

24                  reasonably likely to deceive;

25           b.     Whether Natrol's alleged conduct violates public policy;

26           c.     Whether the alleged conduct constitutes violations of the laws asserted;

27

28   [4] Links for all four studies are available on Natrol's website: https://www.natrol.com/blogs/brain-health/natrol-cognium-clinical-studies.

d.      Whether Natrol engaged in false or misleading advertising;

e.      Whether Plaintiff and the Class members have sustained monetary loss and the proper measure of that loss; and

f.      Whether Plaintiff and Class members are entitled to other appropriate remedies.

## C.  Typicality

45.      Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Natrol's deceptive brain health and memory claims that accompanies each and every Cognium Product that Natrol sold. Plaintiff advances the same claims and legal theories on behalf of herself and all members of the Class.

## D.  Adequacy

46.      Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

## E.  Superiority

47.      A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Natrol. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties

1    under the circumstances here.

2        48.    The Class may also be certified because Natrol has acted or refused to act on grounds

3    generally applicable to the Class.

4        49.    Unless a Class is certified, Natrol will retain monies received as a result of its conduct

5    that were taken from Plaintiff and Class members.

6                                    **COUNT I**

7                **Violation of the Consumer Legal Remedies Act**

8                        **Civil Code § 1750, *et seq.***

9        50.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if

10   fully set forth herein.

11       51.    This cause of action is brought pursuant to the Consumer Legal Remedies Act,

12   California Civil Code § 1750 (the "Act"). Plaintiff is a "consumer" as defined by California Civil Code

13   § 1761(d). Natrol's Cognium Products are "goods" within the meaning of the Act.

14       52.    Natrol violated and continues to violate the Act by engaging in the following practices

15   proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were

16   intended to result in, and did result in, the sale of the Cognium Products:

17       (5)    Representing that [the Cognium Products have] … approval, characteristics, … [and]

18              benefits … which [they do] not have …

19       (7)    Representing that [the Cognium Products are] of a particular standard, quality or grade

20              … if [they are] of another.

21       (9)    Advertising goods … with intent not to sell them as advertised.

22       (16)   Representing that [the Cognium Products have] been supplied in accordance with a

23              previous representation whey [they have] not.

24       53.    Natrol violated the Act by representing and failing to disclose material facts on the

25   Cognium Products' labeling and packaging and associated advertising, as described above, when it

26   knew, or should have known, that the representations were false and misleading and that the omissions

27   were of material facts it was obligation to disclose.

28       54.    Pursuant to § 1782(d) of the Act, Plaintiff and Class seek a court order enjoining the

1  above-described wrongful acts.

2     55.     Pursuant to § 1782 of the Act, Plaintiff sent notification, a true and correct copy of

3  which is attached hereto as **Exhibit A**, to Natrol in writing by certified mail of the particular violations

4  of § 1770 of the Act and demanded that Natrol rectify the problems associated with the actions

5  detailed above and give notice to all affected consumers of Natrol's intent to so act.

6     56.     The notice period having run since Plaintiff's counsel previously sent notification as

7  required by the CLRA, Plaintiff now seeks actual, punitive and statutory damages as appropriate if

8  Natrol as Natrol has not rectified the notified issues within 30 days of the date of written notice

9  pursuant to § 1782 of the Act.

10    57.     Pursuant to § 1780(d) of the Act, attached hereto as **Exhibit B** is the affidavit showing

11  that this action has been commenced in the proper forum.

12                                **COUNT II**

13              **Violation of Business & Professions Code § 17200, *et seq.***

14    58.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if

15  fully set forth herein.

16    59.     Business & Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent

17  business act or practice and unfair, deceptive, untrue, or misleading advertising." For the reasons

18  discussed above, Natrol has violated each of these provisions of Business & Professions Code § 17200.

19    60.     In the course of conducting business, Natrol committed "unlawful" business practices

20  by violating the CLRA, and breaching express warranties.

21    61.     Natrol's actions also constitute "unfair" business acts or practices because, as alleged

22  above, *inter alia*, Natrol engaged in false advertising, misrepresented, and omitted material facts

23  regarding the Cognium Products, and thereby offended an established public policy, and engaged in

24  immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to

25  consumers.

26    62.     For the reasons detailed above, Natrol's actions are "fraudulent" because Natrol falsely

27  and misleadingly claims that the Cognium Products improve memory and brain health and omits the

28  true nature of the Products.

63.     As stated in this complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers. Natrol's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct toward consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*

64.     There were reasonably available alternatives to further Natrol's legitimate business interests other than the conduct described herein.

65.     Business & Professions Code § 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

66.     Natrol's actions, claims, nondisclosures, and misleading statements, as more fully set forth above, were also false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, et seq.

67.     Natrol's advertising, labeling, and packaging as described herein also constitutes unfair, deceptive, untrue, and misleading advertising.

68.     Natrol's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members. Plaintiff has suffered injury in fact and has lost money as a result of Natrol's unfair conduct.

69.     As a result of its deception, Natrol has been able to reap unjust revenue and profit.

70.     Plaintiff, on behalf of herself, and all others similarly situated, and the general public, seeks an injunction enjoining Natrol from continuing its misleading marketing campaign and restitution of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

71.     Plaintiff and members of the Classes have no adequate remedy at law. Legal remedies would not protect Plaintiff and the Class form the continued harm caused by Natrol's misrepresentations and omissions. Even if consumers like Plaintiff become aware of Defendant's misrepresentations and omissions they are still at risk because they may reasonably, but incorrectly, assume that the misrepresentations and omissions had been corrected.

72.     In addition, Plaintiff and the Class may be entitled to disgorgement of profits in the alternative to damages, which may impose more stringent elements. Relative to damages, disgorgement may be more certain, prompt, or efficient than the monetary damages sought thereby rending damages an inadequate remedy. In that regard, while proof of damages requires evidence of market level prices, proof of class-wide restitutionary relief, on the other hand, requires only Natrol's data on its own profits from the sale of Cognium to Plaintiff and the putative class members. It thus may the case that proving and awarding restitution—the amount that Natrol made from the sales of Cognium—may be more certain prompt or efficient than ultimately proving and attaining the monetary damages she seeks—the full amount that California consumers like her paid for the Products purchased.

## COUNT III

## Breach of Express Warranty

73.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the Class.

75.     Section 2-313 of the Uniform Commercial Code provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

76.     At all times, California and other states have codified and adopted the provisions in the Uniform Commercial Code governing the express warranty of merchantability.

a.      Plaintiff and each member of the Class formed a contact with Natrol at the time Plaintiff and the other Class members purchase the Cognium Products. The terms of the contract include the brain health and memory promises made by Natrol on the Cognium Products' labels and packaging, as described above. These representations constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Natrol on the other. Natrol made the following express warranties that it breached when it sold a dummy pill to consumers: "Clinically Shown to Improve Memory and

1  Recall;" "Enhances mental agility by improving cognitive function;" "Improved memory and
2  performance;" and "Results in 4 weeks."

3      77.    All conditions precedent to Natrol's liability under this contract have been performed
4  by Plaintiff and the Class.

5      78.    Natrol has breached the terms of this contract, including the express warranties, with
6  Plaintiff and the Class by not providing the Cognium Products that could provide the brain health
7  and memory benefits as represented and described above.

8      79.    As a result of Natrol's breach of its warranty, Plaintiff and the Class have been
9  damaged in the amount of the purchase price of the Cognium Products they purchased.

10  **PRAYER FOR RELIEF**

11      Wherefore, Plaintiff prays for a judgment:

12      A.    Certifying the Class as requested herein;

13      B.    Enjoining Natrol's misleading marketing campaign;

14      C.    Awarding Plaintiff and the proposed Class members damages, including punitive
15      damages;

16      D.    In the alternative to damages, awarding restitution and disgorgement of Natrol's
17      revenues to Plaintiff and the proposed Class members;

18      E.    Awarding attorneys' fees and costs; and

19      F.    Providing such further relief as may be just and proper.

20  **DEMAND FOR JURY TRIAL**

21      Plaintiff hereby demands a trial by jury of all issues so triable.

22  Date: January 13, 2023        By: _/s/ Annick M. Persinger_
23      Annick M. Persinger (CA Bar No. 272996)
    *apersinger@tzlegal.com*
24      **TYCKO & ZAVAREEI LLP**
    1970 Broadway, Suite 1070
25      Oakland, California 94612
    Telephone: (510) 254-6808
26      Facsimile: (202) 973-0950

27

28

Hassan A. Zavareei (CA Bar No. 181547)
*hzavareei@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Stuart E. Scott (OH Bar No. 0064834)*
*sscott@spanglaw.com*
Kevin Hulick (OH Bar No. 0093921)*
*khulick@spanglaw.com*
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone (216) 696-3232
Facsimile (216) 696-3924

*pro hac vice application to be submitted*

*Attorneys for Plaintiff*

# EXHIBIT A

# SPANGENBERG
## SHIBLEY & LIBER
### TRIAL LAWYERS

75th ANNIVERSARY

COMMITMENT. INTEGRITY. RESULTS.

PETER H. WEINBERGER, OF COUNSEL
WILLIAM HAWAL
PETER J. BRODHEAD, OF COUNSEL
DENNIS R. LANSDOWNE
STUART E. SCOTT
NICHOLAS A. DICELLO
JEREMY A. TOR, LICENSED IN NY, OH
DUSTIN B. HERMAN
MICHAEL P. LEWIS, LICENSED IN CA, OH
KEVIN C. HULICK

CRAIG SPANGENBERG
(1914-1998)

NORMAN W. SHIBLEY
(1921-1992)

JOHN D. LIBER
(1938-2013)

November 8, 2022

**<u>VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED</u>**

Ms. Nina Barton, CEO
Natrol LLC
21411 Prairie Street
Chatsworth, CA  91311

Re:     **Cognium®**

Dear Ms. Barton:

We represent Venus Yamasaki ("Plaintiff") who intends to file a class action lawsuit on behalf of herself and all other similarly situated consumers in California against Natrol LLC ("You") arising out of misrepresentations by You to consumers that Your Cognium Products[1] improve memory, recall, and brain health. Plaintiff intends to bring claims for breach of express warranty, and for violations of California consumer protection law, including Cal. Civ. Code Sec. 1750. The class action lawsuit has not yet been filed. This letter is sent in a good faith attempt to resolve this matter before filing.

The Cognium cognitive benefits message has been made and repeated across a variety of media including on Defendant's website and online promotional materials, at the point of purchase, and on the front of Cognium Products' packaging and labeling. For example, the front of the Cognium Products' packaging and labeling states that Cognium is "Clinically Shown to Improve Memory & Recall."

Plaintiff and other similarly situated consumers purchased Cognium Products unaware of the fact that Defendant's representations were deceptive and not truthful, including because they are provably false and misleading because scientific evidence shows that the Cognium Products are digested like any protein, do not pass the blood-brain barrier, and that, as a result, the Cognium Products are no more effective than a placebo sugar pill. In that regard, the body processes the so-called active ingredient in the Products, silk protein hydrolysate, like any other protein: breaking it down into amino acids. When Cognium enters the bloodstream, it does so as amino acids. Cognium does not and cannot breach the blood-brain barrier, as its molecular makeup is too dense. Furthermore, even if Cognium were able to breach the blood-brain barrier, any effect is infinitesimal, as the amount of protein in a single dose is miniscule relative to the amount of protein humans eat on a daily basis. For instance, a single dose of Cognium Memory contains 100 mg of protein. A single slice of bread, by comparison, contains 2.57 grams of protein, more than 25 times the amount of protein than in Cognium Memory. For these reasons, your claims about the Cognium Products are false and misleading and

---

[1] The Cognium products include Cognium Memory and Cognium Memory Extra Strength.

Ms. Nina Barton, CEO
November 8, 2022
Page 2


violate the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.* Specifically, Your practices violate California Civil Code § 1770(a) under the following subdivisions:

> (5) Representing that goods or services have … approval, characteristics, … uses [or] benefits … which they do not have …
>
> * * *
>
> (7) Representing that goods or services are of a particular standard, quality, or grade … if they are of another.
>
> * * *
>
> (9) Advertising that goods or services with intent not to sell them as advertised.
>
> * * *
>
> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

As detailed in the attached Complaint, Your practices also breach the following express warranties you made to consumers: "Clinically Shown to Improve Memory and Recall," "Enhances mental agility by improving cognitive function," "Improved memory and performance," and "Results in 4 weeks."

We hereby demand on behalf of our client and all others similarly situated that Defendant immediately correct and rectify these violations by either ceasing the sale of its products, or by discontinuing your misleading marketing campaign, ceasing dissemination of false and misleading information as described in the enclosed Complaint, and initiating a corrective advertising campaign to re-educate customers regarding the truth of the products at issue.

Given the stark representations made and the strong science contradicting them, we believe it is in everyone's best interests to discuss the possibility of resolving the matter before suit is filed. Please contact us to discuss. If we do not hear from you within thirty days, we will file the enclosed Complaint, which will include a claim for restitution under the UCL, for breach of express warranty, for injunctive relief, damages, and for fees under the Consumers Legal Remedies Act on behalf of Plaintiff and the Class.

We look forward to your response.

Sincerely,

Kevin C. Hulick
*khulick@spanglaw.com*

KCH:pmf

# EXHIBIT B

**VENUE DECLARATION**

I, Venus Yamasaki, declare as follows:

1.      I am the Plaintiff in this action.

2.      I have personal knowledge of the matters set forth below except to those matters stated herein are based on information and belief, which matters I believe to be true.

3.      If called as a witness, I could and would competently testify to the matters included herein.

4.      I purchased Cognium as described in the Complaint.

5.      I am informed and believe that venue is proper in this Court under California Civil Code Section 1780(d) based on the fact that I purchased Cognium in this county based on the advertising for the product, including the omissions in the labeling and advertising of Cognium.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge. Executed  Jan 10, 2023  at Daly City, California.

*Venus Yamasaki*
Venus Yamasaki ( Jan 10, 2023 16:45 PST)

Venus Yamasaki